UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK CHURCH,<br><br>        Plaintiff,<br><br>v.<br><br>J. NAFTZGER,<br><br>        Defendant. | Case No.: 1:17-cv-00596-AWI-JLT (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENY PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND DENY PLAINTIFF'S MOTION TO STRIKE<br><br>(Docs. 43, 48, 53)<br><br>21-DAY DEADLINE |

The plaintiff claims that when he was housed at Pleasant Valley State Prison, J. Naftzger filed a false disciplinary chrono against him which resulted in Plaintiff losing privileges including property, day room activities, use of the telephone, and credits. In his motion for summary judgment, Officer Naftzgar demonstrates that Plaintiff has not suffered a violation of Due Process. For this reason, the Court recommends that Defendant's motion for summary judgment be **GRANTED**, that Plaintiff's cross-motion for summary judgment be **DENIED**, and that Plaintiff's motion to strike be **DENIED**.

**BACKGROUND**

Jack Church was incarcerated at Pleasant Valley State Prison (PVSP) in 2014. (Doc. 43-2 ("UMF") ¶ 1.) In March 2014, Defendant J. Naftzger, a correctional officer, alleges that he issued

Plaintiff a "disciplinary" or "custodial counseling chrono" because Plaintiff failed to report to work. (*See* Ex. B to UMF, at 10.) Plaintiff alleges that he was never issued this disciplinary chrono. (*See* Ex. F to UMF, at 54-55.)

On May 1, 2014, Plaintiff was assigned to work in PVSP's Facility A Dining. (UMF ¶ 8.) Plaintiff reported to Facility A, but informed Defendant that he would not perform his assigned tasks because he was "not going to expose [him]self to further injury." (UMF ¶¶ 10, 11.) Defendant asked Plaintiff to provide him with a medical "lay-in order" for May 1; but, Plaintiff did not have one. (UMF ¶¶ 13, 14.) Plaintiff had previously received a lay-in order for April 16-30. (UMF ¶ 7.) Consequently, Defendant issued Plaintiff a rules violation report ("RVR") for refusing to work. (UMF ¶ 9.) On May 18, 2014, Correctional Lieutenant N. Greene conducted a hearing and upheld the RVR. (UMF ¶ 16.) Plaintiff was penalized with a loss of 30 days of credits and 90 days of dayroom and telephone privileges. (Doc. 43-3 ("Lt. Greene Dec") ¶ 4.)

Thereafter, Plaintiff filed a petition for writ of habeas corpus against Warden Scott Frauenhiem in Fresno County Superior Court (Case No. 15CRWR682712). (UMF ¶ 18.) At the hearing held on October 13, 2015, Judge W. Kent Hamlin found that Naftzger fabricated Plaintiff's March 2014 disciplinary chrono and that the chrono was the basis for the May 2014 RVR; and he granted Plaintiff's writ. (UMF ¶ 22.) Judge Hamlin ordered that Plaintiff's 30 days of credits be restored, as well as an additional 5 days of lost credits. (UMF ¶ 23.) In his order from the bench, Judge Hamlin specifically stated that the 5 days lost were a "cognizable injury that followed from a denial of [Plaintiff's] due process rights through a flawed disciplinary procedure that included fabricated evidence." (Ex. F to UMF, at 116.) On October 24, 2018, Plaintiff's RVR was expunged. (UMF ¶ 17; *see also* Ex. G to UMF, at 134.)

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving

party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, as Plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of his pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., that it might affect the outcome of the suit under governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., that the evidence is such that a

reasonable jury could return a verdict for the non-moving party, *see Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In attempting to show a factual dispute, the opposing party need not prove a material fact conclusively in her favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). Though, it is still the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## DISCUSSION

### A. Summary Judgment

Defendant moves for summary judgment on the following grounds: (1) that the Due Process Clause requires prison disciplinary decisions to be supported by "some evidence," and that Plaintiff's RVR is indeed supported by some evidence, (Doc. 43-1 at 7), (2) that Plaintiff has not suffered a "deprivation" of liberty protected by the Due Process Clause, (*id.* at 7-8), and (3) that Defendant is entitled to qualified immunity, (*id.* at 8-10).

Plaintiff moves for summary judgment and asserts that Defendant is collaterally estopped from relitigating the due process claim. (Doc. 48 at 6.) Plaintiff argues that because he prevailed in his state habeas proceeding, Defendant is precluded from relitigating the matter here; and, thus

he should prevail in the present action as a matter of law. (*Id.* at 6-7.)

For the reasons below, the Court finds that collateral estoppel does not apply to this action, and that Defendant did not violate Plaintiff's due process rights. Because the Court finds that Plaintiff's due process rights were not violated, the Court need not reach the issue of qualified immunity.

1. Collateral Estoppel

The doctrine of collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that the party previously litigated and was decided in a prior action. *See Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007). Offensive issue preclusion, as opposed to defensive issue preclusion, involves "a plaintiff seek[ing] to prevent a defendant from relitigating an issue that the defendant previously litigated unsuccessfully against a different party." *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 713 n.3 (9th Cir. 2005) (as quoted in *Syverson*, 472 F.3d at 1078.) The Supreme Court has granted trial courts "broad discretion" to determine when offensive issue preclusion should be applied. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).

The Ninth Circuit has held that offensive issue preclusion is appropriate only if the following prerequisites are met: (1) "there was a full and fair opportunity to litigate the identical issue in the prior action," (2) "the issue was actually litigated in the prior action," (3) "the issue was decided in a final judgment," and (4) "the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action." *Syverson*, 472 F.3d at 1078 (citations omitted).

Defendant argues that issue preclusion should not apply here because the issue decided in Plaintiff's habeas action is different from the issue in the present case and because the defendants in the two proceedings are different. (Doc. 49 at 3.) Regarding the first argument, Defendant states that the issue in the habeas proceeding "concerned … whether [Plaintiff] suffered … credit loss as a result of a disciplinary violation," whereas the issue in the current action is whether Defendant "violated Plaintiff's procedural due process by filing a disciplinary chrono." The Court is unpersuaded by this argument. Whether the *issues* in two actions are identical is not determined

by whether the *relief* sought in both actions is identical. *See Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 234 (1998). Thus, it is immaterial whether Plaintiff sought restoration of time credits in the habeas proceeding and now seeks relief for a due process violation in the present. What matters is whether the due process claim was litigated and decided; and it appears it was. In granting Plaintiff's writ of habeas corpus, the state Superior Court specifically concluded that Defendant "fabricated" the disciplinary chrono and that, as a result, Plaintiff's due process rights in the RVR hearing were violated. (Ex. F to UMF, at 114-16.)

Turning to the second argument, Defendant states that the defendants are different because, in the habeas proceeding, the defendant was Warden Scott Frauenhiem, whereas here, the defendant is Correctional Officer Naftzger. (Doc. 49 at 3.) The Court agrees. Thus, the issue is whether Warden Frauenhiem and Officer Naftzger are in privity with each other.

The Court acknowledges that the case law on whether a warden and correctional officers are in privity with each other for purposes of issue or claim preclusion is inconsistent. In *Anderson v. Mendoza* and *Nelson v. Brown*, for example, the courts found that the two were indeed in privity. No. 217CV1244-KJM-DBP, 2018 WL 6528429, at *5 (E.D. Cal. Dec. 12, 2018); No. 11-CV-2202-GPC-WVG, 2014 WL 1096189, at *8 (S.D. Cal. Mar. 19, 2014). In *Wiley v. Pliler*, on the other hand, the court found that they were not in privity. No. CIVS041922-MCE-KJMP, 2007 WL 2344888, at *7 (E.D. Cal. Aug. 15, 2007), *report and recommendation adopted*, 2007 WL 2702972 (E.D. Cal. Sept. 17, 2007).

In general, "privity may exist if there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (internal quotation marks and citation omitted). "[P]rivity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases." *Tahoe-Sierra*, 322 F.32 at 1081-82 (citation omitted).

Though courts have found privity to exist between officers of the same government, *see, e.g., Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992), they have also found privity to be absent between an officer sued in her official capacity and that *same* officer sued in her individual capacity. *See Andrews v. Daw*, 201 F.3d 521, 524-26 (4th Cir. 2000). As provided

in the Restatement (Second) of Judgments, "[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." § 36 (1982). "While '[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent' and in essence are 'suit[s] against the entity.'" *Andrews*, 201 F.3d at 525 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).

Although the above Restatement (Second) of Judgments section applies to *res judicata*, or claim preclusion, the Court finds its rationale, as well as the reasoning in *Andrews*, applicable to issue preclusion here. Thus, the Court finds that there is no privity between Officer Naftzger, sued in his individual capacity in the present action, and Warden Frauenhiem, sued in his official capacity in the habeas action. Although both are employees of the California Department of Corrections and Rehabilitation (CDCR), the Court does not find that there is sufficient commonality of interests between the two to justify preclusion. In the habeas action, the warden sought to defend the prison's disciplinary proceeding generally, and to uphold the proceeding's outcome. Here, the individual correctional officer is defending himself against personal liability. The Court does not believe that the parties "represent[] precisely the same legal right in respect to the subject matter involved," *Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963) (citations omitted), nor do they have sufficient commonality of interests.

Importantly, in the two cases cited above in which courts found privity between a warden and a correctional officer, the party asserting issue or claim preclusion was the defendant. *See Anderson*, 2018 WL 6528429, at *4; *Nelson*, 2014 WL 1096189, at *6. In both cases, the defendant raised this doctrine to defend against a plaintiff who was a party in the prior action. *See Anderson*, 2018 WL 6528429, at *5; *Nelson*, 2014 WL 1096189, at *7. Thus, in those situations, the party against whom preclusion was sought had received a full and fair opportunity to litigate the claim, which is the first prerequisite of issue preclusion provided by the Ninth Circuit in

*Syverson*. 472 F.3d at 1078. The same cannot be said here. Though Plaintiff was a party to the habeas proceeding, Nafzger was not. Therefore, the Court finds that issue preclusion does not apply to the present case.

### 2. Liberty Deprivation

Defendant argues that "Plaintiff has not suffered a deprivation protected by the Due Process Clause," because the state court granted Plaintiff's petition for writ of habeas corpus and ordered his good time credits restored. (Doc. 43-1 at 7.) For this proposition, Defendant cites *Williams v. Lewis*, 2012 U.S. Dist. LEXIS 128564, *1 (N.D. Cal. 2012). (*Id.*) In that case, the plaintiff challenged an RVR issued against him, which had resulted in a loss of 90 days of credits. *Williams*, 2012 U.S. Dist. LEXIS 128564, at *1. As in the present case, the plaintiff challenged the RVR on due process grounds. *Id.* The court dismissed the case for mootness, focusing on the fact that Plaintiff's credits had been restored by the prison. *Id.* at *9.

*Williams* is different from the present case for two crucial reasons: one, it was a federal habeas proceeding, not a civil rights action, and two, the prison in *Williams* restored the plaintiff's credits on its own accord, prior to the conclusion of the habeas proceeding; it was not ordered to do so by a court that had already found a due process violation.

Defendant seems to be conflating two issues: mootness and sufficiency of the alleged deprivation. In *Sandin v. Conner*, the Supreme Court held that the plaintiff-prisoner had not suffered the "type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. 472, 486 (1995). As a result of a disciplinary proceeding, the plaintiff in *Sandin* had been ordered to segregated confinement. *Id.* at 475-46. The Court held that such confinement did not infringe on a recognized liberty interest, and therefore, it did not implicate the Due Process Clause or its protections. *Id.* at 486.

The discipline imposed on Plaintiff *did* implicate a protected liberty interest. Courts have recognized that where the state has created a right to credits for good behavior, the credits are liberty interests protected by the Due Process Clause. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *see also Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Thus, it seems that Defendant is not arguing that the loss of good-time credits is not a

deprivation invoking the Due Process Clause, but, rather, that the restoration of Plaintiff's credits after the habeas proceeding renders his current claim moot.

As stated in the Court's screening order, even if a plaintiff cannot show actual injury, she is still entitled to nominal damages for procedural due process violations. (Doc. 10 at 7). "Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, … the denial of procedural due process … [is] actionable for nominal damages without proof of actual injury." *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (citations omitted); *see also Farrar v. Hobby*, 506 U.S. 103, 112 (1992). Thus, even if Plaintiff can no longer show actual injury because his credits were restored, if he can prove that a due process violation indeed occurred, he can still pursue nominal damages for the violation. (*See* Doc. 21 at 2-3.) The case may be different if, for example, the prison had restored Plaintiff's credits on its own accord during the RVR hearing, since such a hearing is part of the process provided to Plaintiff, and thus could counter a procedural defect that may have occurred beforehand.

### 3. Due Process

Generally, "the requirements of due process are satisfied if some evidence supports the decision by [a prison] … to revoke good time credits." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. However, this deferential "some evidence" standard is not applicable to "a prison guard's initial accusation of a rule violation where the guard's accusation itself is allegedly false and retaliatory." *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997). In other words, "where a prisoner alleges a correctional officer has falsely accused him of violating a prison rule in retaliation for the prisoner's exercise of his constitutional rights, the correctional officer's accusation is not entitled to the 'some evidence' standard of review … afford[ed] disciplinary

9

administrative decisions." *Id.* at 269.

The Court finds that *Hines* is not applicable here, and that the "some evidence" standard articulated in *Hill*, 472 U.S. 445, applies. In *Hines*, the Ninth Circuit held specifically that the "some evidence" standard does not apply to a guard's accusation of a rule violation if allegedly "false *and* retaliatory." 108 F.3d at 268 (emphasis added). Although not stated explicitly, the Ninth Circuit's phrasing strongly suggests that, to avoid the deferential "some evidence" standard, a plaintiff must allege that a prison guard has made an accusation that is not only false, but also retaliatory. In follow-up cases, the Ninth Circuit and district courts have continued to suggest this. *See, e.g.*, *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) ("In *Hines*, … we held that 'some evidence' standard of *Hill* did not apply to retaliation claims."); *McQuillion v. McKenzie*, 35 F. App'x 547, 549, 551 (9th Cir. 2002) (denying summary judgment under *Hines* where plaintiff alleged false and retaliatory chronos); *McClenton v. Hubbard*, No. CV1-06-1593-SRB, 2009 WL 2488144, at *6 (E.D. Cal. Aug. 13, 2009) (*Hines* not applicable because plaintiff did not allege defendant acted in retaliation); *Jones v. Lopez*, No. 3:00CV0509-ECR-VPC, 2007 WL 951658, at *14 (D. Nev. Mar. 26, 2007) ("some evidence" standard not applicable because no due process violation alleged, only retaliation claim). Because Plaintiff has not alleged that Defendant falsified his March 2014 disciplinary chrono in *retaliation* for engaging in protected activity, (*see* Docs. 1, 19, 21), Plaintiff's due process claim is subject to the "some evidence" standard.

Even if the "some evidence" standard did not apply, Defendant's issuance of an RVR for Plaintiff's failure to work is supported by significant, uncontested evidence. In his deposition, Plaintiff admits that he was assigned to work on May 1, 2014 and that he told Defendant that he was unwilling to perform his assigned duties on that date. (UMF ¶¶ 8, 11; Ex. A to Doc. 43-4 ("Church Dep."), at 7-9.) Plaintiff also admits that he did not have a medical lay-in order excusing him from work on that date. (Church Dep. at 9.) According to the California Code of Regulations, a "serious rules violation" includes refusing to work as ordered or assigned. Cal. Code Regs. tit. 15, § 3315(a)(3)(J). Thus, although the May RVR refers to the March chrono, (Ex. E to UMF), this was not necessary to issue and uphold the RVR. (*See* UMF ¶ 16; *see also* Doc.

10

43-3 ("Dec. of N. Greene") ¶ 3, *and* Cal. Code Regs. tit. 15, § 3314(f).) For this reason, the Court finds that Plaintiff's due process rights were not violated, because he was provided with adequate process related to the issuance of the RVR.

### B. Motion to Strike

In support of his reply to Plaintiff's motion for summary judgment opposition, Defendant filed an amended version of Lt. Greene's declaration. (Doc. 51.) In this declaration, Lt. Greene states that, in his original declaration, (Doc. 43-3), he mistakenly wrote that the RVR hearing for Plaintiff was held on May 8, 2014, when it was actually held on May 18, 2014. (Doc. 51 ¶¶ 2-3.) Lt. Greene states that, besides this typographical error, everything in his prior declaration is accurate. (*Id.* ¶ 5.)

Plaintiff has moved to strike Defendant's reply. (Doc. 53.) Plaintiff argues that, in the reply, Defendant "raise[s] issues which were not made as a defense in the form of a motion to dismiss." (*Id.* at 1.) Plaintiff also argues that Defendant "attempts to now re-declare a different stance initially taken with Lieutenant Greene's declaration." (*Id.* at 2.)

Defendant's reply is not a pleading, *see* Fed. R. Civ. P. 7(a), and it is proper under Local Rule 230(l). Parties generally cannot raise issues for the first time in a reply brief without waiving those issues. *See Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996). However, in Defendant's reply, including Lt. Greene's supporting declaration, Defendant only addresses issues that were previously raised in his motion for summary judgment and Plaintiff's opposition. Thus, the motion to strike is denied.

## CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Court **RECOMMENDS** that:

1. Defendant's motion for summary judgment, (Doc. 43), be **GRANTED**;
2. Plaintiff's cross-motion for summary judgment, (Doc. 48), be **DENIED**; and,
3. Plaintiff's motion to strike, (Doc. 53), be **DENIED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 21 days** of the date of service of these Findings and Recommendations, Plaintiff may file written

objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff's failure to file objections within the specified time may result in waiver of his rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**November 5, 2019**__           _____/s/ Jennifer L. Thurston_____
                                                              UNITED STATES MAGISTRATE JUDGE